**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| **KARAMELION LLC,** | C.A. No. 1:19-cv-6329 |
| Plaintiff, | **JURY TRIAL DEMANDED** |
| v. | |
| **ELEXA CONSUMER PRODUCTS, INC.,** | **PATENT CASE** |
| Defendant. | |

## DEFENDANT ELEXA CONSUMER PRODUCTS, INC.'S ANSWER, DEFENSES, AND COUNTERCLAIMS

Defendant Elexa Consumer Products, Inc. ("Elexa") files its Answer, Defenses, and Counterclaims and states as follows:

### I. THE PARTIES

1.      Plaintiff Karamelion LLC ("Karamelion" or "Plaintiff") is a Texas limited liability company with its principal place of business at 5570 FM 423, Suite 250 #2022, Frisco, Texas 75034.

**ANSWER:** Elexa is without sufficient information to admit or deny paragraph 1 and therefore denies it.

2.      On information and belief, Defendant Elexa Consumer Products, Inc. ("Defendant") is a corporation organized and existing under the laws of Illinois, with a place of business at 2275 N Half Day Rd., Bannockburn, Illinois 60015.

**ANSWER:** Admitted.

## II. JURISDICTION AND VENUE

3.      This action arises under the patent laws of the United States, Title 35 of the United States Code. This Court has subject matter jurisdiction of such action under 28 U.S.C. §§ 1331 and 1338(a).

**ANSWER:** Admitted.

4.      On information and belief, Defendant is subject to this Court's specific and general personal jurisdiction, pursuant to due process and the Illinois Long-Arm. Statute, due at least to its business in this forum, including at least a portion of the infringements alleged herein. Furthermore, Defendant is subject to this Court's specific and general personal jurisdiction because Defendant is an Illinois corporation.

**ANSWER:** Elexa admits that this Court has general and specific jurisdiction over it. Otherwise, denied.

5.      Without limitation, on information and belief, within this state, Defendant has used the patented inventions thereby committing, and continuing to commit, acts of patent infringement alleged herein. In addition, on information and belief, Defendant has derived revenues from its infringing acts occurring within Illinois. Further, on information and belief, Defendant is subject to the Court's general jurisdiction, including from regularly doing or soliciting business, engaging in other persistent courses of conduct, and deriving substantial revenue from goods and services provided to persons or entities in Illinois. Further, on information and belief, Defendant is subject to the Court's personal jurisdiction at least due to its sale of products and/or services within Illinois. Defendant has committed such purposeful acts and/or transactions in Illinois such that it reasonably should know and expect that it could be held into this Court as a consequence of such activity.

**ANSWER:** Elexa admits that it sells goods in this forum. Otherwise, denied.

6.      Venue is proper in this district under 28 U.S.C. § 1400(b). On information and belief, Defendant is an Illinois corporation. Under the patent venue analysis, Defendant resides only in this District. On information and belief, from and within this District Defendant has committed at least a portion of the infringements at issue in this case.

**ANSWER:** Admitted.

7.       For these reasons, personal jurisdiction exists and venue is proper in this Court under 28 U.S.C. § 1400(b).

**ANSWER:** Admitted.

### III. COUNT I

### (PATENT INFRINGEMENT OF UNITED STATES PATENT NO. 6,275,166)

8.      Plaintiff incorporates the above paragraphs herein by reference.

**ANSWER:** Defendant repeats its responses to the above paragraphs by reference.

9.      On August 14, 2001, United States Patent No, 6,275,166 ("the '166 Patent") was duly and legally issued by the United States Patent and Trademark Office. The application leading to the '166 patent was filed on January 19, 1999. (Ex. A at cover). The '166 Patent is titled "RF Remote Appliance Control/Monitoring System." A true and correct copy of the '166 Patent is attached hereto as Exhibit A and incorporated herein by reference.

**ANSWER:** Admitted.

10.      Plaintiff is the assignee of all right, title and interest in the '166 patent, including all rights to enforce and prosecute actions for infringement and to collect damages for all relevant times against infringers of the '166 Patent. Accordingly, Plaintiff possesses the exclusive right and standing to prosecute the present action for infringement of the '166 Patent by Defendant.

3

51468709;1

**ANSWER:** Elexa is without sufficient information to admit or deny paragraph 10 and therefore denies it.

11.     The invention in the '166 Patent relates to control and monitoring of distributed systems in buildings such as systems for controlling and monitoring heating, air conditioning, lighting, security, occupancy, and usage of distributed facilities, (Ex. A at col. 1:5-12). Control of such distributed systems in the prior art commonly used computer networks and business software. *(Id.* at col. 1:11-13). A major difficult with such systems was the expense of wiring inter-connections between elements of the system, particularly when there are additions or changes to be made in the system. *(Id.* at col. 1:14-18). Prior art attempts to reduce the expense of the systems included using efficient network products such as using a widely known Ethernet standard, using AC power wiring to transmit RF communications to remove controllers, and using a combination of wired and wireless communications. *(Id.* at col. 1:18-27).

**ANSWER:** Elexa denies that the '166 Patent discloses a valid invention. Otherwise, Elexa admits that the patent contains the cited language.

12.     However, these centralized wireless control systems for building appliances have not been widely used mainly because systems that have a sufficient communication ranges are normally subject to regulations and licensing requirements that are prohibitively expensive. *(Id.* at col. 1:28-32). Also, systems that are powerful enough to be used in widely distributed installations are unnecessarily expensive to be used in smaller installations. *(Id.* at col. 1:32-34). With respect to wireless communication, there is limited availability of RF carrier frequencies, and potential interference with other nearby systems that might be operating in similar frequencies. *(Id.* at col. 1:34-37). Because of the continued deficiencies of

the prior art solutions, there was a need for a wireless appliance control system that overcomes the disadvantages of the prior art solutions. *(Id.* at col. 1:38-39).

**ANSWER:** Elexa denies that the '166 Patent discloses a valid invention. Otherwise, Elexa admits that the patent contains the cited language.

13. The inventors developed an invention that "meets this need by providing a wireless configuration that uses a distributed array of low power (short range) wireless controllers that are also functional as relay units for communicating with a headend control computer at long range." *(Id.* at col. 1:42-46).

**ANSWER:** Defendant admits that the patent contains the cited language. Otherwise denied.

14. The '166 patent discloses exemplary embodiments of the claimed invention. The claimed invention is typically implemented in a building or location that has an appliance control/monitoring system. *(Id.* at col. 3:64 — col. 4:7). For example, the following figure is of a building (11) having a distributed array of appliance management stations (12) that wirelessly communicate with a headend control station (14) *(Id.* at col. 3:66 — col. 4:4). The typical appliances connected to the appliance control/monitoring system are heating, ventilation and air conditioning units (HVAC), temperature sensors, motion detectors, and audio/video devices. *(Id.* at col. 1:5-9, col, 4:54-61). The appliances are interfaced with relay units that have appliance interface/controllers to communicate with the appliance and satellite radio transceivers. *(Id.* at col. 4:62-66). The satellite radio transceivers of the relay units are operable at low power and have a limited wireless communications range that reaches only a portion of the building or location. *(Id.* at col. 4:62-66). In order to for the relay units to communicate beyond their limited wireless range, they communicate by relaying transmissions using intermediate relay

units to the intended destination. *(Id.* at col. 4:66 — col. 5:1). An exemplary simplified circuit block diagram of the appliance controller portion of the relay unit, including a satellite radio transceiver, is shown in Figure 3 of the '166 patent.  (Ex. A). The microprocessor (34) is connected between a satellite transceiver (22) and the appliance device (24). *(Id.* at col. 5:13-15).

**ANSWER:**  Defendant admits that the patent contains the cited language.  Otherwise denied.

15.     The '188 patent includes a diagram of an exemplary command protocol (Fig. 4) and exemplary return. protocol (Fig. 5).  (Ex. A). The exemplary command protocol includes an address section (62) that includes a destination address (63) and may include relay addresses (64) so that the message may be relayed to another device. *(Id.* at col. 7:40-43). Following the address section is a command section (66) that includes device commands (67) that are directed to particular appliance devices at the destination relay unit. *(Id.* at col. 7:43-47). The exemplary return protocol includes a counterpart of the address section (72) that includes a destination address (73) and relay addresses (74). *(Id.* at col. 7:48-51). Following the address section of the return protocol is a feedback section (76) that include feedback elements (77) that are responsive to the appliance devices at the destination relay unit. *(Id.* at col. 7:51-55).

**ANSWER:**  Defendant admits that the patent contains the cited language.  Otherwise denied.

16.     A pictorial diagram showing an exemplary process for using a portion of the system is shown in Figure 6 of the '166 patent.  (Ex. A). A transmitter in the headend computer (H) signals the addresses of relay units (20), with one of the addresses being the destination address (D), and the other addresses include a first and second relay address (R1, R2), and a control signal (C) for appliance (A) being interfaced to the destination relay unit (D). *(Id.* at

col. 7:56-65). The first relay unit decodes the first relay address, and transmits the control signal, the second relay address and the destination address from the first relay unit; the same steps occur at the second relay unit but with respect to decoding the second relay address. *(Id.* at col. 7:65 — col. 8:1). The destination relay unit decodes the destination address and feeds the control signal to the appliance; then the destination unit transmits the destination address, the first and second relay addresses, and an acknowledgement signal (Ak). *(Id.* at col. 8:2-6). The second relay unit decodes the second relay address, and then transmits the acknowledgement signal (Ak), the first relay address, and the destination address; the same steps occur at the first relay unit but with respect to decoding the first relay address. *(Id.* at col. 8:6-9). The headend computer decodes the destination address and receives the acknowledgement signal (Ak). *(Id.* at col. 8:9-11). The decoding and transmitting in the relay units are implemented by first and second instruction portions (82A, 82B), respectively, of the relay program (82). *(Id.* at col. 8:11-14). The feeding of the control signal by the relay unit to the appliance and generating the acknowledgement signal occurs in the appliance program (84). *(Id.* at col. 8:14-16). Both the relay program and appliance program are in the microcomputer memory of each relay unit. *(Id.* at col. 8:16-18).

**ANSWER:** Defendant admits that the patent contains the cited language. Otherwise denied.

17. As explained during the prosecution history, the prior art did not teach a relay unit being an appliance controller that communicated with a headend computer using at least two other relay units. The invention therefore overcame the prior art, which were excessively expensive, had insufficient bandwidth, were ineffective in serving multiple devices, were unreliable, and difficult to use. (Ex. B at col. 1:43-51).

**ANSWER:** Denied.

18.    <u>Direct Infringement.</u> Upon information and belief, Defendant has been directly infringing at least claim 1 of the '166 patent in Illinois and this District, and elsewhere in the United States, by performing actions comprising making, using, selling, and/or offering for sale an appliance controller for a distributed appliance system having a headend computer, a multiplicity of appliances, and a plurality of relay units that satisfies the limitations of at least claim 1, including without limitation the Elexa Dome Z-Wave Devices including Siren, Mouser, Leak Sensor, Motion Detector, Door/Window Sensor, Range Extender, Door/Window Sensor Pro, On/Off Plug-in Switch, and Water Main Shut-Off ("Accused Instrumentality").

**ANSWER:** Denied.

19.    Accused Instrumentality provides an appliance controller *(e.g.,* Elexa Dome Z-Wave Devices including: Siren, Mouser, Leak Sensor, Motion Detector, Door/Window Sensor, Range Extender, Door/Window Sensor Pro, On/Off Plug-in Switch, and Water Main Shut-Off) for a distributed appliance system *(e.g.,* Z-Wave network) having a headend computer *(e.g.,* primary controller, in this case a controller *(e.g.,* Z-Wave Hub) for the network including the Siren, Mouser, Leak Sensor, Motion Detector, Door/Window Sensor, Range Extender, Door/Window Sensor Pro, On/Off Plug-in Switch, and/or Water Main Shut-Off), a multiplicity of appliances *(e.g.,* appliances such as lights, outlets, etc.), and a plurality of relay units *(e.g.,* repeaters), one of the relay units being the appliance controller *(e.g.,* Z-Wave node).

**ANSWER:** Denied.

20. Each Accused Instrumentality is an appliance controller comprising a low power satellite radio transceiver *(e.g.,* radio frequency transceivers within the various Z-Wave devices) having a range being less <u>than</u> a distance to at least some of the appliances.

**ANSWER:** Denied.

21. Each Accused Instrumentality has an appliance interface for communicating with the at least one local appliance *(e.g.,* an interface which connects and makes possible the transmission of a <u>signal</u> to the actual electrical appliance like light or socket). For example, the switch communicated with the light to turn off the light, and outlet communicates with the plugged-in appliance to power the appliance. *(Supra* 1120).

**ANSWER:** Denied.

22. Each Accused Instrumentality has a microcomputer connected between the satellite radio transceiver *(e.g.,* Z-Wave transceiver) and the appliance interface and having first program instructions for controlling the satellite transceiver *(e.g.,* the microcontroller controls the transmission of signals from the transceiver to the other Z-Wave nodes in the network), and second program instructions for directing communication between the satellite transceiver and the appliance interface *(e.g.,* the microcontroller within the Z-Wave device enables the command received from the primary controller by the Z-Wave transceiver to be communicated to the appliance interface of the device so that the intended action can be executed such as switch on/off a light or plugged in device, turn on a light). *(Supra ¶20;)*

**ANSWER:** Denied.

23. Each Accused Instrumentality provides first program instructions including detecting communications directed by the headend computer *(e.g.,* primary controller) relative to the same appliance controller *(e.g.,* targeted Z-Wave node), signaling receipt of

the directed communications *(e.g.,* sending acknowledgement signal through the Z-Wave transceiver), and directing communications to the headend computer relative to the same appliance controller *(e.g.,* sending status of an appliance or signal from a connected sensor). For example, a primary controller can send/receive messages to program various connected Z-Wave devices; On/Off Plug-In Switch can receive communications to turn on or off appliances or can communicate regarding the status of the appliance. *(Supra* ¶20; https : //standards ee e. org/getieee802/download/802 .15.4-2011 .pdf).

**ANSWER:** Denied.

24. Each Accused Instrumentality has a second program instructions including detecting relay communications directed between the headend computer and a different relay unit, transmitting the relay communications, detecting a reply communication from the different relay unit, and transmitting the reply communication to the headend computer, wherein at least some of the relay units communicate with the headend computer by relay communications using at least two others of the relay units *(e.g.,* a Z-Wave node detects messages from primary controller and checks whether message is intended for itself, if not, then acting as a repeater, transmits it to next intended device in the route; the Z-Wave node detects messages from another Z-Wave node and forwards it to primary controller). The Accused Instrumentality work on Z-Wave technology, which uses mesh network and would communicate with the headend computer by relay communications using at least two others of the relay units *(e.g.,* repeaters). *(Supra* ¶20)

**ANSWER:** Denied.

### III. COUNT II

### (PATENT INFRINGEMENT OF UNITED STATES PATENT NO. 6,873,245)

25.     Plaintiff incorporates the above paragraphs herein by reference.

**ANSWER:** Defendant repeats its responses to the above paragraphs by reference.

26.     On March 29, 2005, United States Patent No. 6,873,245 ("the '245 Patent") was duly and legally issued by the United States Patent and Trademark Office. The application leading to the '245 patent was filed on August 14, 2001, and is a continuation-in-part of the application leading to the '166 Patent. (Ex. B at cover). The '245 Patent is titled "RF Remote Appliance ControllMonitoring System." A true and correct copy of the '245 Patent is attached hereto as Exhibit B and incorporated herein by reference.

**ANSWER:** Admitted.

27.     Plaintiff is the assignee of all right, title and interest in the '245 patent, including <u>all</u> rights to enforce and prosecute actions for infringement and to collect damages for all relevant times against infringers of the '245 Patent. Accordingly, Plaintiff possesses the exclusive right and standing to prosecute the present action for infringement of the '245 Patent by Defendant.

**ANSWER:** Defendant is without sufficient information to admit or deny the allegations of this paragraph and therefore, denies them.

28.     Because the '245 patent is a continuation in part of the application leading to the `166 patent, the '245 patent has a substantially overlapping specification and the background regarding the '166 patent is equally applicable and is incorporated by reference with respect to the '245 patent. *(Supra ¶¶11-17).*

**ANSWER:** Admitted.

29.  **Direct Infringement.** Upon information and belief, Defendant has been directly infringing at least claim 1 of the '245 patent in Illinois and this District, and elsewhere in the United States, by performing actions comprising making, using, selling, and/or offering for sale an appliance controller for a distributed appliance systems having a multiplicity of appliances, and a plurality of relay units, that satisfies the limitations of at least claim 1, including without limitation the Elexa Dome Z-Wave Devices including: Siren, Mouser, Leak Sensor, Motion Detector, Door/Window Sensor, Range Extender, Door/Window Sensor Pro, On/Off Plug-in Switch, and Water Main Shut-Off ("Accused Instrumentality").

**ANSWER:** Denied.

30.  Each Accused Instrumentality provides an appliance controller *(e.g.,* Z-wave Elexa Dome Z-Wave Devices including: Siren, Mouser, Leak Sensor, Motion Detector, Door/Window Sensor, Range Extender, Door/Window Sensor Pro, On/Off Plug-in Switch, and Water Main Shut-Off) for a distributed appliance system *(e.g.,* Z-Wave network) having a multiplicity of appliances *(e.g.,* appliances such as lights, appliances, etc.), and a plurality of relay units *(e.g.,* repeaters), one of the relay units being the appliance controller *(e.g.,* a Z-Wave Controller).   *(Supra* ¶20;

http://zwavepublic.com/sites/default/files/command class specs 2017A/SDS13782-4%20Z-Wave%20Management%20C om_mand%20Class%20Speci fi cation.pdf;

http ://zwavepubli c. com/s te s/de fault/file s/APL13031-2%20-%20Z -Wave%20Networking%20B asi cs.pdf)

**ANSWER:** Denied.

31.     Each Accused Instrumentality has a low power satellite radio transceiver *(e.g.,* radio frequency transceivers within the various Z-Wave devices) having a range being less than a distance to at least some of the appliances. *(Supra ¶20).*

**ANSWER:** Denied.

32.     Each Accused Instrumentality has an appliance interface for communicating with the at least one local appliance *(e.g.,* an interface which connects and makes possible the transmission of signal to the actual electrical appliance like a light and plugged in appliances). *(Supra ¶20).*

**ANSWER:** Denied.

33.     Each Accused Instrumentality has a microcomputer *(e.g.,* microcontroller) connected between the satellite radio transceiver *(e.g.,* Z-Wave transceiver) and the appliance interface and having first program instructions for controlling the satellite transceiver *(e.g.,* the microcontroller controls the transmission of signals from the transceiver to the other Z-Wave nodes in the network) and second program instructions for directing communication between the satellite transceiver and the appliance interface *(e.g.,* the microcontroller within the Z-Wave device enables the command received from the appliance interface to be communicated to the local appliance by the Z-Wave transceiver so that the intended action can be executed such as turn off an appliance). *(Supra* Tim, 22; https://Z-Wavealliance.org/Z-Wave-oems-developers/; http://zwavepubli c. com/s i tes/de fault/file s/c ommand_class_sp ecs_2017 A/S D S 137 82-4%20Z - W ave%20 M anagement % 20C ommand%20Class%20Speci fi cati on. p df; http://www sfwireless-w orld . corn/ Tut ori als/Z-W ave-physi cal-layer.html).

**ANSWER:** Denied.

34.     Each Accused Instrumentality has a first program instructions including detecting communications directed by another of the relay units *(e.g.,* another Z-Wave node acting as a repeater) relative to the same appliance controller *(e.g.,* targeted Z-Wave node), signaling receipt of the directed communications (sending acknowledgement signal through the Z-Wave transceiver), and directing communications to the other of the relay units relative to the same appliance controller *(e.g.,* sending status of an appliance or signal from a connected sensor). For example, the On/Off Plug-in Switch can send/receive messages to program various connected Z-Wave devices. *(Supra* 20; http: //zw av epubli c. com/s i t es/de fault/fi le s/AP L13031-2%20-%20Z - Wave%20Networking%20B asi cs.pdf;

http ://zw av epubli c. com/si te s/ default/fi les/c oramand class specs 2017A/ SD S13784-4%20Z-Wave%20Netw ork-Protocol %20C omma nd%20Class%20Specifi cation.pdf).

**ANSWER:** Denied.

35.     Each Accused Instrumentality has a second program instructions including detecting relay communications directed between the another of the relay units and a different relay unit, transmitting the relay communications, detecting a reply communication from the different relay unit, and transmitting the reply communication to the other of the relay units, wherein at least some of the relay units communicate with others of the relay units by relay communications using at least two others of the relay units *(e.g.,* a Z-Wave node detects messages from primary controller and checks whether message is intended for itself, if not, then acting as a repeater, transmits it to next intended device in the route. Also, the Z-Wave node detects messages from another Z-Wave node and forwards it to primary controller. N number of nodes may be involved in the process acting as repeaters or relay units). The Accused Instrumentality works on Z-Wave technology, which uses mesh network and would

communicate with the other relay units by relay communications using at least two others of the relay units *(e.g.,* repeaters). *(Supra* ¶¶20, 24; http://zwav epubli c. corn/ sites/d efaultf fil es/APL13031 -2%20%20Z -W ave%20Networking%20Basi es .pdf; http://zwavepublic.com/sitesidefault/files/command class specs 2017 A/S D S13784-4%20Z-Wave%20Network-Prot ocol%20C ommand%20Class%20Specificati on.pdf; https://www.zwaveproducts.com/leam/ask-an-expert/glossary/mesh-network; http :// do c sli de.us/documents/Z-Wave-techni cal-basics-small.html; http l/WWW. Z NV aveproducts .com/learn/Z-Wave).

**ANSWER:** Denied.

36. Plaintiff has been damaged because of Defendant's infringing conduct. Defendant is thus liable to Plaintiff for damages in an amount that adequately compensates Plaintiff for such Defendant's infringement of the '166 Patent and the '245 Patent, *i.e.,* in an amount that by law cannot be less than would constitute a reasonable royalty for the use of the patented technology, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

**ANSWER**: Denied.

37. On information and belief, Defendant had at least constructive notice of the '166 Patent and the '245 Patent by operation of law, and there are no marking requirements that have not been complied with.

**ANSWER:** Denied.

## PRAYER FOR RELIEF

Plaintiff's prayer for relief does not state an allegation and therefore Defendant denies that Plaintiff is entitled to any of the relief prayed for in the Complaint, or any relief whatsoever, including damages, injunctive relief, attorney's fees, and costs, or interest.

## DEFENSES

### First Defense: Failure to State a Claim

The Complaint fails to state a claim upon which relief may be granted, as Plaintiffs cannot establish each element of the asserted causes of action.

### Second Defense: Non-Infringement

Defendants do not infringe a valid and enforceable claim of the '166 Patent or the '245 Patent directly or indirectly, literally or under the doctrine of equivalents, willfully, or otherwise.

### Third Defense: Invalidity

The claims of the '166 Patent and the '245 Patent are invalid because they fail to comply with the requirements for patentability stated in the patent laws of the United States, which include 35 U.S.C. §§102, 103, and 112.

### Fourth Defense: Estoppel

Plaintiffs' claim of patent infringement is barred, in whole or in part, by the equitable doctrine of estoppel, including, but not limited to, the doctrine of prosecution history estoppel. Upon information and belief, by reason of proceedings in the U.S. Patent and Trademark Office during the prosecution of the patent applications that resulted in the '245 and '166 Patents, as are shown by the respective file histories, and by reason of amendment, cancellation, or abandonment of claims, and the admissions and other statements made therein by or on behalf the patentee, Karamelion is estopped from claiming a construction of the patents that would

cause any valid claim to cover a product made, sold, imported, distributed or marketed by Defendant.

**Additional Defenses**

Defendants reserve the right to asset additional defenses that may become known through discovery, including inequitable conduct and patent misuse.

**COUNTERCLAIMS**

Defendant Elexa hereby brings its counterclaims against Plaintiff Karamelion for patent invalidity and non-infringement under 35 U.S.C. §§ 1, *et seq.* (patent laws of the United States), 28 U.S.C. §§ 2201, *et seq.* (creating a federal remedy for declaratory judgment and further relief) and Federal Rules of Civil Procedure 13 and 57, in support alleges;

1. Elexa is an Illinois corporation with its principal place of business at Bannockburn, Illinois.

2. Counterclaim Defendant is a Texas corporation with its principal place of business at Frisco, Texas.

3. These claims arise under the patent laws of the United States, 35 U.S.C. 1, *et seq.*, on the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202.

4. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331, 1338, and 1367(a).

5. Counterclaim Defendant is subject to this Court's personal jurisdiction by virtue of having initiated this litigation in this District.

6. Venue is proper in this Court action pursuant to 28 U.S.C. §§ 1391 and 1400.

## COUNT I

**DECLARATORY JUDGMENT AS TO NON-INFRINGEMENT OF THE '245 PATENT**

7.     Defendant restates and incorporates by reference paragraphs 1-6 above as if fully set forth herein.

8.     The Accused Products do not meet all of the limitations of any valid and enforceable claim of the '245 Patent literally or under the doctrine of equivalents.

9.     Accordingly, Counterclaim Plaintiffs have not infringed, and are not currently infringing, any valid and enforceable claim of the '245 Patent directly, indirectly, contributorily, by inducement, or in any other manner.

10.     A definite and concrete, real and substantial, justiciable controversy exists between Counterclaim Plaintiffs and Counterclaim Defendant regarding Counterclaim Plaintiffs' alleged infringement of the '245 Patent, which is of sufficient immediacy and reality to warrant issuance of a Declaratory Judgment.

11.     Counterclaims Plaintiffs requests a declaration that Counterclaim Plaintiffs do not infringe any valid and enforceable claim of the '245 Patent.

## COUNT II

**DECLARATORY JUDGMENT AS TO INVALIDITY OF THE '245 PATENT**

12.     Defendants restate and incorporate by reference paragraphs 1-11 above as if fully set forth herein.

13.     This case involves an actual controversy: the validity of the '245 Patent.

14.     Upon information and belief, one or more claims of the '245 Patent lack novelty and/or are obvious in view of the prior art, including but not limited to the prior art listed in Exhibit E.

51468709;1

15.     Upon information and belief, one or more claims of the '245 Patent are indefinite, lack sufficient written description, and/or are not enabled. At a minimum, the '245 Patent does not adequately describe or enable the meaning or scope of certain limitation of the claims, accordingly, such claims are invalid under 35 U.S.C. § 112.

16.     A definite and concrete, real and substantial, justiciable controversy exists between Counterclaim Plaintiffs and Counterclaim Defendant regarding the invalidity of the '245 Patent, which is of sufficient immediacy and reality to warrant issuance of a Declaratory Judgment.

17.     Counterclaim Plaintiffs requests a declaration that the claims of the '245 Patent are invalid.

## COUNT III

## DECLARATORY JUDGMENT AS TO NON-INFRINGEMENT OF THE '166 PATENT

18.     Defendant restates and incorporates by reference paragraphs 1-17 above as if fully set forth herein.

19.     The Accused Products do not meet all of the limitations of any valid and enforceable claim of the '166 Patent literally or under the doctrine of equivalents.

20.     Accordingly, Counterclaim Plaintiffs have not infringed, and are not currently infringing, any valid and enforceable claim of the '166 Patent directly, indirectly, contributorily, by inducement, or in any other manner.

21.     A definite and concrete, real and substantial, justiciable controversy exists between Counterclaim Plaintiffs and Counterclaim Defendant regarding Counterclaim Plaintiffs' alleged infringement of the '166 Patent, which is of sufficient immediacy and reality to warrant issuance of a Declaratory Judgment.

22.     Counterclaims Plaintiffs requests a declaration that Counterclaim Plaintiffs do not infringe any valid and enforceable claim of the '166 Patent.

## COUNT IV

**DECLARATORY JUDGMENT AS INVALIDITY OF THE '166 PATENT**

23.     Defendants restate and incorporate by reference paragraphs 1-22 above as if fully set forth herein.

24.     This case involves an actual controversy: the validity of the '166 Patent.

25.     Upon information and belief, one or more claims of the '166 Patent lack novelty and/or are obvious in view of the prior art, including but not limited to the prior art listed in Exhibit E.

26.     Upon information and belief, one or more claims of the '166 Patent are indefinite, lack sufficient written description, and/or are not enabled.  At a minimum, the '166 Patent does not adequately describe or enable the meaning or scope of certain limitation of the claims, accordingly, such claims are invalid under 35 U.S.C. § 112.

27.     A definite and concrete, real and substantial, justiciable controversy exists between Counterclaim Plaintiffs and Counterclaim Defendant regarding the invalidity of the '166 Patent, which is of sufficient immediacy and reality to warrant issuance of a Declaratory Judgment.

28.     Counterclaim Plaintiffs requests a declaration that the claims of the '166 Patent are invalid.

## PRAYER FOR RELIEF

WHEREFORE, Counterclaim Plaintiffs respectively request that this Court enter judgment in its favor as follows:

51468709;1

A.    Declaring that Counterclaim Plaintiffs do not infringe any valid or enforceable claims of the '245 or '166 Patents.

B.    Declaring that the '245 and '166 Patents are invalid;

C.    Granting Counterclaim Plaintiffs preliminary and/or permanent injunctive relief, including, but not limited to, a preliminary and permanent injunction that enjoins Karamelion, it's officers, directors, partners, agents, servants, employees, parents, subsidiaries, affiliated corporations or companies, other related business entities, and all other persons acting in concert, participation, or in privity with them and/or their successors and assigns from making false and misleading statements of fact to Elexa's customers regarding Counterclaim Plaintiffs' goods or business, or statements intended to intimidate Elexa's customers or potential customers;

D.    Declaring this case exceptional and awarding Counterclaim Plaintiffs attorney's fees and costs; and

E.    Awarding Plaintiffs such other and further relief in law or equity as this Court deems just and proper.

## JURY DEMAND

Counterclaim Plaintiff requests a trial by jury on issues so triable.

Dated: January 13, 2020                    Respectfully submitted,


                                           */s/ Thomas Pasternak*
                                           Thomas Pasternak
                                           Evelina Gentry
                                           Akerman LLP
                                           71 South Wacker Drive, 47th Floor
                                           Chicago, IL 60606
                                           thomas.pasternak@akerman.com
                                           evelina.gentry@akerman.com

                                           Attorneys for Defendant
                                           ELEXA CONSUMER PRODUCTS, INC.

## CERTIFICATE OF SERVICE

I hereby certify that on January 13, 2020, I electronically filed the foregoing **DEFENDANT ELEXA CONSUMER PRODUCTS, INC.'S ANSWER, DEFENSES, AND COUNTERCLAIMS** with the Clerk of the Court using the electronic case filing system (ECF), which will send notification to the counsel of record.

*/s/ Thomas Pasternak*
Thomas Pasternak

51468709;1